INHABITANTS OF ACTON, Appellants,

vs.

COUNTY COMMISSIONERS OF YORK COUNTY.

York.   Opinion February 16, 1885.

*Ways.   Grading.   Cattle passes.   Stat. 1875, c. 25.*

Where all the members of a committee appointed on appeal, to revise the proceedings of county commissioners in the location of a highway, participate in their action a majority may decide.

The power given to county commissioners by stat. 1875, c. 25, to "grade hills in any such way," authorizes them to require that valleys shall be filled as well as hills cut down.

The county commissioners have no power to require cattle passes to be constructed in a highway located by them, and where such requirement is a part of their adjudication of location it renders their proceedings bad.

The description of the way prayed for in a petition to the county commissioners of York county was as follows: "Beginning at the terminus of the new road now building in Newfield to Balch Mills, thence in a western direction to the N. H. line;" *Held*, sufficient to give the commissioners jurisdiction.

ON EXCEPTIONS.

An appeal from the decision of the county commissioners of York county in laying out a highway in Acton.   The exceptions were to the ruling of the court in accepting the report of the committee, appointed by this court, against the written objections of the appellants.

*R. P. Tapley*, for the appellants.

The petition does not set out a case within the jurisdiction of the county commissioners, nor does the record of location.   The way asked for in the petition, and the one laid out by the commissioners was wholly within the town of Acton.   This record does not disclose in positive and direct terms a jurisdiction in the commissioners to do what they did do, and nothing is to be left to inference in such cases.   *Goodwin* v. *Co. Com.* 60 Maine, 328; *Pettengill* v. *Co. Com.* 21 Maine, 382; *North Berwick* v. *Co. Com.* 25 Maine, 69; *Pownal* v. *Co. Com.* 8 Maine, 271; *Bethel* v. *Co. Com.* 42 Maine, 478; *State* v. *Oxford*, 65

Maine, 210; *Scarboro* v. *Co. Com.* 41 Maine, 604; *Plummer* v. *Waterville*, 32 Maine, 566; R. S., c. 18, § 1.

The commissioners exceeded their authority in requiring fills. If they can fill one "hollow" they can require a road to be made level the entire length. They had no authority to require cattle guards. A majority of the committee cannot decide. The whole body must act. It would not be competent for two to proceed in the absence of the other, and determine the questions raised. It is not a case like those decided. 39 Maine, 223; 48 Maine, 358; 62 Maine, 519; 63 Maine, 265; 64 Maine, 262.

It is not a case within R. S., c. 1, § 6, cl. III, if it was there would be no necessity of the provision of the statute requiring the appointment of a person to supply a vacancy occurring by death, resignation or by becoming interested.

*Luther S. Moore* and *Harry V. Moore*, for the petitioners, cited: *Harkness* v. *Co. Com.* 26 Maine, 353; *Windham* v. *Co. Com.* 26 Maine, 406; *Minot* v. *Co. Com.* 28 Maine, 121; *Com.* v. *West Boston Bridge*, 13 Pick. 195.

LIBBEY, J.   When the report of the committee was presented for acceptance, two objections were taken to it.

1. That, where all of the committee acted, it was not competent for two of the committee to decide questions before it, the third not agreeing with them.

2. That the county commissioners, in their proceeding, requiring the way to be graded and cattle passes to be built, exceeded their powers, and that the action of the committee affirming such proceedings is without authority.

As to the first objection, the committee derives its powers from the statute, and act under its authority. While the statute provides that the county commissioners may act by majority, it is silent as to the committee, which, on appeal, is appointed to revise their proceedings. But the R. S., c. 1, § 6, cl. III, provides that, "words, giving authority to three or more persons, authorize a majority to act, when the enactment does not otherwise determine."

We think the case is clearly within this rule, and that the objection is untenable.

Under the second objection it is claimed that the county commissioners and the committee exceeded their powers in requiring the way to be graded in the manner specified in their report. The learned counsel for the appellants claims that, while the commissioners have power to require hills to be cut down, they have no power to require the earth taken from the cut, to be filled in the valleys between the hills.

Prior to 1875, the county commissioners had no power to require the way, or any portion of it, to be graded; but in that year, by c. 25 of the public acts, such power was conferred upon them. By the first section, section 1 of the R. S., c. 18, was amended so as to give the commissioners power "to grade hills in any such way." It is contended that this language gives the power to require hills in the way to be cut down, but no power to require a fill. We think this construction is too narrow. To grade, means " to reduce to a certain degree of ascent or descent." This embraces fills in the valleys as well as cuts in the hills. The grade may be made by a cut in the hill or a fill in the valley, or, as is more usually the case, by both combined. If there could be any doubt as to the power of the commissioners, under this section, to require the earth taken from the cut in the hill to be filled in the valley, it is removed by section 7 of the same act, which gives them the "power to direct the amount of such grading, which shall be stated in their return."

But the action of the commissioners requiring several cattle passes to be constructed in the way at different points, presents a more difficult question. By the statute, the commissioners have power to locate a way, require it to be graded, and to fix the time, not exceeding three years, within which it shall be constructed and opened for public' travel by the town; but it gives them no power to prescribe and direct the manner in which it shall be constructed, except as to grading. The duty is cast upon the town to so construct it that it shall be safe and convenient for travellers; but the manner of constructing it is for the determination of the town, and it is responsible for it.

The county commissioners derive all their powers over ways. from the statutes, but no power is given them to require the construction of cattle passes in a way.

It is contended, however, by the counsel for the petitioners,. that, admitting the commissioners had no such power, still their requirement in this respect in excess of their powers, may be rejected, and the rest of their proceedings affirmed. Upon this point we think the rule is correctly stated by SHAW, C. J., in Commonwealth v. West Boston Bridge Co. 13 Pick. 195 :: " If the proceedings are so independent of, and disconnected with each other, that a part may be quashed, and leave the remainder, an entire, beneficial and available judgment, to the purpose for which it was intended, the court may quash that which is erroneous, and affirm the remainder." But here the proceedings were all had at one time, relate to the same subject matter, to location of the way, and are an entirety. The part requiring the cattle passes cannot be separated from the rest.. If that be done, the way will not remain such as was located. The court cannot say that the commissioners would have made the location, and appraised the land damage as they did, without the requirement of the cattle passes. How much influence that may have had upon their judgment cannot be known. In this respect the case is like Braintree v. Co. Com'rs, 8 Cush. 546.. The report must be recommitted to the committee. Shattuck v. Co. Com'rs, 76 Maine, 167.

Another question, not directly presented by the exceptions,. has been elaborately argued, and as it is vital to any further proceedings in the case, it is proper that we should decide it now. It is contended that the original petition is not sufficient to give the county commissioners jurisdiction to act in the matter, inasmuch as it does not appear that the way prayed for extends from town to town. The description of the way in the petition is as follows : "Beginning at the terminus of the new road now building in Newfield, to Balch Mills, thence in a western direction to the N. H. line." It is said that the way described lies wholly in Acton, but it connects with a way leading into Newfield. We think that the jurisdiction of the

county commissioners is fully sustained by *King* v. *Lewiston*, 70 Maine, 406, and cases there cited.

> *Case recommitted to the committee for further proceedings, in accordance with this opinion.*

PETERS, C. J., WALTON, VIRGIN, EMERY and HASKELL, JJ., concurred.